UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARY MARTUCCI,

    Plaintiff,

        v.                                                       No. 3:18-cv-01357(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

    Defendant.
_____X

**<u>RULING ON PENDING MOTIONS</u>**

This is an administrative appeal following the denial of the plaintiff, Mary Martucci's, application for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[2] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the

---

[1] The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 18]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. # 21]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants the Commissioner's motion to affirm.

## LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## BACKGROUND

**a. Facts**

Plaintiff filed her DIB and SSI applications on March 30, 2012, alleging a disability onset date of September 15, 2008. Her date last insured is June 30, 2012. Plaintiff's claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On May 6, 2014, a hearing was held before Administrative Law Judge Ronald J. Thomas ("the ALJ"). On June 27, 2014, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied review, and Plaintiff appealed to this court. On November 1, 2016, United States Magistrate Judge Margolis remanded the matter to the Commissioner and entered judgment in Plaintiff's favor. *Martucci v. Colvin*, No. 3:16-cv-00689(JGM). The Appeals Council issued an order on March 16, 2017 returning the case to the ALJ for a new hearing. This new hearing was held on February 2, 2018. Plaintiff and a vocational expert ("VE") provided testimony. On May 22, 2018, the ALJ issued a decision denying Plaintiff's claims. The ALJ's 2018 decision became the final determination of the Commissioner. This action followed.

Plaintiff was forty-one years old on her alleged disability onset date. She has a high school diploma and some college. In 2006, Plaintiff was diagnosed with chondrosarcoma of the left scapula; she had surgery in 2006 to excise the tumor and remove a portion of her scapula and related musculature. In 2008, Plaintiff injured her right, dominant, hand, and required surgery to the small finger to implant a plate and screws. Plaintiff last worked in 2008; she testified she stopped working due to lack of mobility in her left arm and difficulty using her right hand. Her past work experience includes positions as a receptionist, data entry clerk, and collections clerk.

Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 18-1]. The Court adopts this stipulation and incorporates it by reference herein.

### b. The ALJ's Decision

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

Here, at Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 15, 2008, the alleged onset date. (R. 885). At Step Two, the ALJ found Plaintiff has the following severe impairments: status post chondrosarcoma of the left shoulder with scapula resection; status post-fracture of the right metatarsal finger; asthma; obesity; and

depressive disorder. (*Id.*). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 855). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> Plaintiff can perform light work except she can occasionally bend, twist, squat, kneel, crawl, and climb. She cannot climb ladders, ropes, or scaffolds. She can occasionally reach overhead with the left, non-master arm. She must avoid hazards such as heights, vibration, and dangerous machinery, but driving is okay. She can perform work tasks that require only occasional handling with the right master hand. She can have occasional interaction with the public, co-workers, and supervisors. She must work in an environment free from concentrated poor ventilation, dust, fumes, gases, odors, humidity, and temperature extremes.

(R. 857). At Step Four, the ALJ found Plaintiff is unable to perform past relevant work. (R. 861). Finally, at Step Five, the ALJ relied on the testimony of the VE to find that there are jobs existing in significant numbers in the national economy Plaintiff can perform. (R. 862). Specifically, the VE testified that a person with Plaintiff's vocational factors and the assessed RFC can perform the positions of sandwich board carrier and surveillance system monitor. (*Id.*). Accordingly, the ALJ found Plaintiff was not disabled.

## **DISCUSSION**

Plaintiff raises several arguments in support of the Motion to Reverse, which the Court will consider in turn.

### A. **Evaluation of Opinion Evidence**

Plaintiff first claims that the ALJ failed to provide good reasons for assigning partial weight to the opinions of her treating orthopedists, Dr. Dodds and Dr. Lindskog. She also argues that if the opinions of those treating sources were insufficient or unclear, the ALJ should have

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

sought additional information from them. The Commissioner argues that the ALJ properly weighed the opinion evidence and explained the reasons for the weight assigned. The Court agrees with the Commissioner.

In making an RFC finding, the ALJ must analyze the medical opinions of record. The treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). When a treating physician's opinion is not deemed controlling, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). These factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 416.927(c)(2). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess,* 537 F.3d at 129. An ALJ is not, however, required to "slavish[ly] recite[]each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Dr. Dodd, who treated Plaintiff for her right hand finger fracture, completed a Medical Source Statement in 2013. He opined that Plaintiff could occasionally lift and carry up to ten pounds and never more than ten pounds, and could sit, stand, and walk for eight hours in a

6

workday. (Ex. 24F). Dr. Dodd further found Plaintiff could never reach overhead; never push/pull; and occasionally reach, handle, finger, and feel with her right hand. (*Id.*). He also found she could never climb ladders or scaffolds, and never kneel, crouch, or crawl. (*Id.*). The ALJ gave Dr. Dodds's opinion "some weight." (R. 861). He reasoned that the opinion was five years old, which detracted from its relevance. (*Id.*). He also reasoned that the opinion was inconsistent with Dr. Dodd's 2013 assessment that Plaintiff had intact sensation to light touch in the nerves of her right hand. (R. 859).

The Court finds the ALJ properly considered the relevant factors in determining the weigh to assign to Dr. Dodds's opinion. The ALJ identified Dr. Dodds as an orthopedist, acknowledging he is a specialist. The ALJ also considered the treating relationship, noting that Dr. Dodds saw Plaintiff for her finger fracture and last visited him in July 2013. Further, the ALJ explained why Dr. Dodds's opinion was not supported by, and inconsistent with, other evidence in the record: specifically, Dr. Dodds's notes from a July 2013 visit indicate that Plaintiff had sensation to light touch in the right hand, that the incision was well-healed and non-tender, and that there was mild stiffness to full flexion. (Ex. 26F). That a doctor's opinion is in conflict with his or her own clinical notes is a factor that can amount to "good reasons" for attributing limited weight. *See Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016). The ALJ's decision also discusses a right hand x-ray from July 2013 which notes lateral side plate and associated screws along the fifth metacarpal, anatomic alignment, and unremarkable soft tissue. (R. 1385). There were no changes from a 2009 imaging study. (*Id.*). This objective evidence supports the RFC's limitation to occasional handling with the right hand, but not some of the other limitations to which Dr. Dodds opined. In all, the ALJ applied, in substance, each of the factors relevant to weighing the opinion of a treating physician. This was what was required,

7

and the Court finds no error. *See Johnson v. Berryhill*, No. 3:17-cv-1255 (MPS), 2018 WL 6381096, at *2 (D. Conn. Dec. 6, 2018) ("Even though the ALJ did not explicitly state that he was applying the 'treating physician rule,' it is clear that the ALJ faithfully applied the regulation by considering each factor, and applicable precedent requires no more.").

Likewise, the ALJ properly considered the relevant factors in weighing the opinion of Dr. Lindskog. Dr. Lindskog, who treated Plaintiff for her left shoulder impairment, completed a physical capacity statement in 2012. He diagnosed Plaintiff with left scapular chondrosarcoma and listed her prognosis as excellent. (R. 1795). He noted limited function of the left shoulder, left shoulder pain, and limited strength and motion in the left shoulder. (*Id.*). He said Plaintiff's pain would rarely interfere with attention and concentration. (R. 1796). Dr. Lindskog opined Plaintiff could sit, stand, and walk for more than three hours at a time, and that she could sit, stand, and walk for about eight hours total in a work day. (R. 1796-97). Dr. Lindskog found Plaintiff could frequently lift and carry less than five pounds, occasionally lift and carry five to ten pounds, and never lift or carry more than ten pounds. (R. 1798). He found no restrictions with the right dominant hand, but that there were limitations with the left fingers, hand, and arm. (*Id.*). He said Plaintiff would be off task fifteen percent of a workday. (R. 1799). The ALJ gave Dr. Lindskog's opinion some weight, but explained that there were "some inconsistencies" in the opinion that "limit its probative value." (R. 861). Specifically, the ALJ noted that the opinion provides limitations for the left hand, while the record establishes it is the right hand that has limitations, and that the opinion assessed a fifteen percent off-task time while also stating that pain would only rarely interfere with Plaintiff's ability to concentrate. (*Id.*).

The ALJ provided good reasons for the weight assigned to Dr. Lindskog's opinion. Again, the ALJ identified Dr. Lindskog as an orthopedist, thus recognizing he was specialist.

8

The ALJ also discussed the treatment relationship, noting that Plaintiff saw Dr. Lindskog for her left shoulder. In addition, the ALJ properly pointed out an apparent inconsistency in the opinion itself: Dr. Lindskog found Plaintiff's pain would rarely interfere with her attention and concentration, but also found she would be off-task due to her limitations fifteen percent of the workday. This is a discrepancy that detracts from the reliability of the opinion. Further, the treatment notes for Plaintiff's left shoulder do not support limitations in the left hand. For example, at a 2009 office visit with Dr. Lindskog, Plaintiff complained of continued pain in her left shoulder, but no new medical issues were noted (R. 589); at a 2012 visit, Plaintiff was tender in the shoulder area, but was neurovascularly intact to the left hand (R. 592); at another 2012 office visit, Plaintiff complained of continued pain in the shoulder, slightly improved, but did not mention any issues with the left hand (R. 609). When a treating physician's opinion is "internally inconsistent and inconsistent with other substantial record evidence," an ALJ can properly decline to accord it controlling weight. *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012). The Court finds the ALJ properly applied the factors relevant to weight a treating physician's opinion here.

Plaintiff also argues that the ALJ was required to re-contact Dr. Dodds and Dr. Lindskog before giving their opinions less than controlling weight. The Court disagrees. An ALJ must "affirmatively … seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (quoting *Rosa v. Callahan,* 168 F.3d 72, 79 & n. 5 (2d Cir. 1999)). When an ALJ possess a claimant's "complete medical history," and the record is "'adequate for [the ALJ] to make a determination as to disability,'" further development of the record is not warranted. *Id.* (quoting *Perez v. Chater,* 77 F.3d 41, 48 (2d Cir. 1996)). Here, the record consists of 1851 pages, contains treatment notes

and opinions from treating doctors, includes four consultative examinations, and contains opinions from state agency medical consultants; it was adequate to make a disability determination. Thus, the ALJ was not required to seek additional information from Plaintiff's treating orthopedists. *See Ecklund v. Comm'r of Soc. Sec.*, 349 F. Supp. 3d 235, 245-46 (W.D.N.Y. 2018) (explaining that when a record is "extensive and contains several medical opinions," an ALJ is not required to re-contact a treating source to obtain a clarification of an opinion).

In sum, the Court finds that the ALJ's decision to discount the opinions of the treating physicians is not in error in this case. While the record contains some conflicting evidence, substantial evidence supports the ALJ's resolution of it. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (explaining that when the record contains evidence pointing both ways, the ALJ's factual findings are conclusive as long as they are supported by substantial evidence).

**B. The RFC finding**

Plaintiff also argues that the RFC finding is deficient. Specifically, she avers that the evidence does not support the lifting and reaching requirements or the limitation to only occasional interaction with others. The Court finds substantial evidence supports the RFC.

In addition to the medical evidence discussed above, the opinions of the state agency medical consultants were consistent with the ALJ's assessment that Plaintiff can perform the lifting and reaching requirements in the RFC. The consultants opined that Plaintiff could occasionally reach overhead with her left upper extremity and occasionally handle with her right arm. (Ex. 3A, 4A, 7A, 8A). They also opined she was capable of the lifting requirements of light work. (*Id.*). The Court has reviewed the record carefully and finds support for these opinions in it. When, as there, the opinions of the state agency medical consultants are

consistent with the medical evidence, they can provide substantial support of the RFC. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995).

The Court additionally finds that the RFC reasonably limits Plaintiff to occasional interaction with others. As the ALJ points out, Plaintiff did exhibit coarse behavior at one consultative exam, which the ALJ found to support "some mental limitations." (R. 860). There is no other evidence in the record, including from the other three consultative examinations, to support a finding that Plaintiff required any additional mental health limitations. And, as the ALJ points out, Plaintiff did not seek any treatment for mental health issues. An ALJ may appropriately rely on a failure to seek treatment for a condition when formulating an RFC. *See Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008). The ALJ's determination that Plaintiff was capable of occasional interaction with co-workers, supervisors, and the public, and did not require further mental limitations, is supported by substantial evidence.

**C. Assessment of Plaintiff's Subjective Complaints**

Third, Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints. The Court disagrees. When reaching his RFC determination, the ALJ discussed the evidence of record, including Plaintiff's own statements. Specifically, the ALJ considered Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. The ALJ considered Plaintiff's hearing testimony that she has difficulty moving her left arm and shoulder; she cannot use her right hand; she can walk, sit, and stand; and she uses her inhaler daily. (R. 857-58, 886-90). He noted Plaintiff's testimony that she takes Tylenol for pain, takes Prozac for anxiety, and does not seek mental health treatment. (R. 866). The ALJ also discussed Plaintiff's daily activities, including that she cannot cook or clean, drives locally, walks to the grocery store, and

cannot type or write. (*Id.*). The ALJ reasonably found that Plaintiff's claims regarding the effects of her symptoms were not entirely consistent with the medical evidence. In reaching this conclusion, the ALJ provided a detailed basis for this finding: he summarized Plaintiff's testimony, and then reviewed the objective medical evidence, finding that the record did not support the degree of limitation Plaintiff claimed. In particular, the ALJ discussed reports indicating mild scapular discomfort, decreased range of motion, no recurrence of the chondrosarcoma, no post-operative complications, and no rotator cuff tears or other intra-articular pathology. He also discussed records pertaining to the non-union repair of the right small finger metacarpal, and that Plaintiff had intact sensation to light touch in the nerves of the right hand. Since the record contained some evidence that was inconsistent with Plaintiff's subjective complaints, the ALJ had discretion to weight that evidence against Plaintiff's subjective complaints. *See Seneschal v. Berryhill*, No. 3:18-cv-00015 (RMS), 2019 WL 1075606, at *11 (D. Conn. Mar. 7, 2019). When, as here, the ALJ "identified specific record-based reasons for his ruling," the court will not "second-guess the credibility finding." *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010).

**D. The Step Five Finding**

Lastly, Plaintiff argues that the Commissioner has not met his burden at Step Five of the sequential evaluation process because the testimony of the VE was inadequate. Specifically, she avers that the sandwich board carrier position cannot be performed with only occasional contact with the public; that the surveillance system monitor position the VE discussed is not the occupation actually defined in the *Dictionary of Occupational Titles* ("DOT"); and that the VE's source of job incidence data, *Occupational Quarterly II*, produced by U.S. Publishing, is unreliable.

At Step Five, the Commissioner must show the existence of work in the national economy that a claimant can perform. To satisfy this burden, "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based [the] opinion, and [the hypotheticals] accurately reflect the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (internal quotation marks and citations omitted).

The hypothetical presented to the VE, which was the assessed RFC, accurately reflected Plaintiff's limitations and capabilities, as discussed above. Thus, the only question is whether the VE's opinion constitutes substantial evidence to support the ALJ's decision. The Court concludes that it does.

First, there is no evidence to suggest that the position of sandwich board carrier requires more than occasional interaction with the public. In fact, the record is clear that the VE was well-aware of the limitation to occasional interaction because just after identifying the sandwich board carrier position, the VE noted that the position of school bus monitor would be eliminated because of the limits on occasional public contact. (R. 905).

As to the surveillance system monitor job, Plaintiff contends that the position about which the VE testified is a loss-prevention monitor, but that the DOT defines the position as a government services one that monitors public transportation terminals. According to Plaintiff, a far greater amount of training and skill is required to perform the loss-prevention monitor position. The Court has not observed any evidence to credit this claim. The VE affirmed that his testimony was consistent with the DOT. (R. 907). He also explained that although the DOT definition is focused on the government services industry, it does not exclude other industries in which the position may occur, and that in the various permutations of job, an individual may be

13

watching for someone trying to steal things, which the DOT classifies as unskilled. (R. 909-10). The ALJ could reasonably rely on this testimony.

Finally, it was appropriate for the VE to rely on a resource from U.S. Publishing to form his opinion. In fact, "courts have noted that it is appropriate for a vocational expert to consult documents from the U.S. Publishing Company in providing their testimony regarding job availability." *Seneschal*, 2019 WL 1075606, at *5 (citing cases). The Second Circuit has made clear that "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." *See McIntyre*, 758 F.3d at 152; *see also Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008) (explaining that when a VE identifies the sources generally consulted to determine the number of jobs available, the VE is not required to "identify with greater specificity the source of his figures or to provide supporting documentation."); *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407 (finding that when a VE "utilized reliable statistical sources as well personal knowledge and experience to develop the occupational projections provided," a "step-by-step description of the methodology used" was not required.). In all, the Court finds the Commissioner has met his Step Five burden.

## Conclusion

After a thorough review of the record and consideration of all of the arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals

from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

        SO ORDERED, this  27th  day of June, 2019, at Bridgeport, Connecticut.

                 */s/ William I. Garfinkel*
                 WILLIAM I. GARFINKEL
                 United States Magistrate Judge